# In the United States Court of Federal Claims

No. 21-1578C
Filed: August 30, 2021

| |
|---|
| DR. AHMAD ALJINDI,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>    *Defendant*. |

## OPINION AND ORDER

**TAPP, Judge.**

Plaintiff Dr. Ahmad Aljindi ("Dr. Aljindi"), appearing *pro se*, filed his Complaint on July 14, 2021, raising two sets of claims. (Compl., ECF No. 1). The first set of claims pertain to a separate lawsuit in the Central District of California. (Compl.); *see also Aljindi v. United States*, Case No. 8:20-cv-00796 (C.D. Cal. 2021) ("*Aljindi IV*"). They involve allegations of corruption, abuse of power, bribery, and obstruction of justice by various government officials. The second set of claims relate to Dr. Aljindi's application for an Economic Injury Disaster Loan ("EIDL") from the Small Business Administration ("SBA"). Along with his Complaint, Dr. Aljindi also filed an application to proceed *in forma pauperis* (IFP). (Mot., ECF No. 2); *see* 28 U.S.C. § 1915. Because this Court cannot review the decisions of other federal courts, and because the SBA has not made a final determination on Dr. Aljindi's loan application, the Court dismisses these claims for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

## I. Background

On April 24, 2020, Dr. Aljindi filed a lawsuit in the Central District of California, bringing claims of employment discrimination, negligence, tort, intellectual property, and copyright infringement. *See Aljindi IV*, Doc. No 1.  Dr. Aljindi's complaint named 12 defendants representing different federal agencies; he claimed those individuals had discriminated against him by not offering him an employment position with the federal government. *Id*. In that complaint, Dr. Aljindi also raised claims of theft of intellectual property and copyright infringement, asserting that the named federal agencies published his scientific work without his consent. *Id*.

That lawsuit was far from Dr. Aljindi's first attempt to litigate these claims.  The District Court had dismissed Dr. Aljindi's employment discrimination claims as frivolous three times before he filed his latest lawsuit in California. In dismissing the first case containing these

allegations on January 8, 2019, the District Court noted that Dr. Aljindi's complaint "contain[ed] little more than confusing, and at times unintelligible, delusional, and/or fantastic, stream-of-consciousness rambling" and was "patently insufficient to state any rational, much less plausible, claim for relief." *Aljindi v. United States*, Case No. 8:18-cv-02301, Doc. No. 8 (C.D. Cal. Jan. 8, 2019) ("*Aljindi I*"). Soon after, on July 25, 2019, Dr. Aljindi filed another action which the District Court dismissed for similar reasons. *Aljindi v. United States*, Case No. 8:19-cv-01434, Doc. No. 8 (C.D. Cal. Aug. 5, 2019) ("*Aljindi II*") (finding Dr. Aljindi's complaint as "similarly infirm" as his previous complaint in *Aljindi I*); *see also Aljindi v. United States*, Case No 19-55926, Doc. No. 13 (9th Cir. Sept. 16, 2019) (appeal dismissed as frivolous). Unswayed, Dr. Aljindi filed yet another identical case on January 2, 2020, which the District Court again summarily dismissed. *Aljindi v. United States*, Case No. 8:20-cv-00002, Doc. No. 13 (C.D. Cal. Jan. 24, 2020) ("*Aljindi III*") (dismissed on the same ground as *Aljindi I* and *II*); *see also Aljindi v. United States*, Case No. 20-55111 (9th Cir. Aug. 7, 2020) (appeal dismissed as frivolous).

In his latest related attempt before the California District Court, Dr. Aljindi, dissatisfied with the District Court's management of his case, sought on three separate occasions to disqualify the presiding judge. *Aljindi IV*, Doc. Nos. 21, 25, 72. His requests were referred, duly reviewed, and found to be groundless on all three occasions. *Id*. Doc. Nos. 24, 27, 80. On two of these occasions, Dr. Aljindi asked the Ninth Circuit to review the denial of his motion to disqualify the presiding judge, and the Circuit denied his appeals both times. *Aljindi IV*, Doc. Nos. 53 and 69. The District Court then ultimately dismissed Dr. Aljindi's case again on February 16, 2021. *Id*. Doc. No. 108. After Dr. Aljindi appealed the District Court's final decision yet again, and after the Ninth Circuit dismissed that appeal yet again, he initiated two more lawsuits in this Court. *Id*. Doc. No. 115.[1] This Court also finds that Dr. Aljindi is not entitled to relief.

## II.    Analysis

### A.  *Lack of Subject-Matter Jurisdiction*

Determining the Court's jurisdiction over the claim is a threshold inquiry in every case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). In reviewing whether the Court has subject-matter jurisdiction over a claim, the Court will take the undisputed facts alleged in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). RCFC 12(h)(3) dictates that, if at any time, the Court finds that it lacks subject-matter jurisdiction over a case it "must dismiss" the case.

This Court's jurisdiction is rooted in the Tucker Act, and that Act allows the Court to hear cases that involve non-tort claims seeking monetary damages against the United States. 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is merely a jurisdictional statute, and does not independently create a cause of action. Therefore, a proper claim before the Court must arise from another money-mandating source of law—whether it be a constitutional provision, a statute, a regulation, or an express or implied contract with the United States. *Loveladies Harbor, Inc. v.*

---

[1] Dr. Aljindi's second case before this Court raises the same claims as *Aljindi IV*. *See Aljindi v. United States*, Case No. 21-1295.

*United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994). Dr. Aljindi's claims do not have a nexus to any such sources. Therefore, the Court must dismiss the claims for lack of subject-matter jurisdiction.

In his first set of claims, Dr. Aljindi asks the Court to review the "Judicial Scandal" that was *Aljindi IV*. (Compl. at 3). Dr. Aljindi raises allegations of bribery, fraud, and obstruction of justice that he asserts implicate both the presiding judge and the government attorneys. (*Id.*). But this Court's jurisdiction does not extend to claims that invite review of state or district court decisions. *Innovair Aviation Ltd. v. United States*, 632 F.3d 1336, 1344 (Fed. Cir. 2011); *Rohland v. United States*, 136 Fed. Cl. 55, 66 (2018) (Court of Federal Claims does not have jurisdiction to entertain collateral attacks on decisions of state courts and federal district courts).

The Court is mindful that complaints drafted by *pro se* litigants invite a more lenient review from the Court, with an eye towards providing these litigants with the same opportunity at justice had they been represented by attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). If the Court interprets Dr. Aljindi's claims generously, it can assume that he is not necessarily asking the Court to overturn other courts' decisions but to instead investigate the actions of the officials involved in rendering those decisions. However, even under that interpretation, claims of obstruction of justice, improper influencing of official proceedings, fraud, deceit, false statements, perjury and other similar offenses against federal officials do not fall within the Court's jurisdiction. *See Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) (the Tucker Act's jurisdictional grant does not extend to cases "against individual federal officials"); *Hicks v. United States*, 118 Fed. Cl. 76 (2014). Furthermore, the Court finds that many of Dr. Aljindi's claims are rooted in the criminal code. *See e.g.*, 18 U.S.C. §§ 371–373 (Conspiracy to commit offense or to defraud United States), 1501–1521 (Obstruction of justice), 201 (Bribery of public officials and witnesses). These claims also run afoul of the Court's jurisdictional mandate by asking the Court to adjudicate criminal violations. *See Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994). For these reasons, the Court lacks subject-matter jurisdiction to review any of the claims in relation to Dr. Aljindi's litigation in the Central District of California.

### B.  Failure to Exhaust Administrative Remedies

Dr. Aljindi also requests relief for what he claims is the SBA's abuse of power in denying his application for an EIDL. Even if SBA's EIDL decisions are reviewable, the Court will not stand in judgment of agency decisions until they are final. In other words, a plaintiff must show that all administrative remedies have been exhausted before seeking relief from the Court. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938) (holding that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."); *Straw v. United States*,     Fed. Appx.    , 2021 WL 3440773 at *4 (Fed. Cir. Aug. 6, 2021) (Court of Federal Claims cannot review the SBA's denial of Paycheck Protection Program loan application until a final agency decision is reached).

Here, nothing in the record suggests that the SBA officials reached a final decision as to Dr. Aljindi's eligibility for the EIDL. The record establishes that after receiving Dr. Aljindi's application, the SBA notified him on May 6th, 2021, that his application had failed one qualification criteria: proving that his business had been established after January 31, 2020. (Compl., Ex. B). The SBA letter, nonetheless, notified him that he may still be eligible for the loan if he were to provide the requisite records rectifying that deficiency. (*Id.*). On May 26, Dr. Aljindi submitted a reconsideration request to the SBA's Disaster Assistance Processing and Disbursement Center ("DAPDC"). (*Id.*). On July 7th, the DAPDC Reconsideration Team notified Dr. Aljindi that they were unable to review his

request for reconsideration until he provided them with additional records, including his "2019 year tax returns" and his "IRS Tax Form 4506-T for Applicant Business." (*Id.*). The DAPDC Reconsideration Team indicated that the information could simply be attached to the same email and returned to the same address for further processing. (*Id.*). Dr. Aljindi has submitted no evidence that he assisted the SBA officials in making a final reconsideration decision by either forwarding the requested documents or providing further explanation as to their content.

Furthermore, even if the DAPDC Reconsideration Team had issued a final decision affirming the denial, Dr. Aljindi could still have other administrative remedies available to him before seeking judicial review. EIDL loans are administered under the disaster loan programs authorized by the Small Business Act, 15 U.S.C. 636(b). SBA regulations of section 636(b) set out the procedures for reviewing denials of loan applications, including the option to appeal the DAPDC's final determination to the DAPDC Director for a final decision. *See* 13 CFR § 123.13 ("What happens if my loan application is denied?").

Strong adherence to the doctrine of exhaustion of administrative remedies allows administrative agencies to perform functions that they are particularly competent in. *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998) (the exhaustion doctrine allows federal agencies to make a factual record, to apply their expertise, and to correct their own errors as to issues that would be moot judicial controversies.). Most importantly, because judicial review requires a commitment of time and resources, the doctrine of exhaustion protects judicial economy and efficiency against abusive litigants that refuse to cooperate in the administrative process or fully pursue their administrative remedies before initiating legal action. *See Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (2013). Because Dr. Aljindi has not availed himself of the administrative remedies available to him with regards to his SBA claims, he has failed to state a claim upon which relief can be granted. *See* RCFC 12(b)(6).

## C. Application to Proceed In Forma Pauperis

RCFC 77.1(c) mandates prepayment of certain fees for appearing before the Court. In certain circumstances, the Court can, but is not required to, allow a party to proceed without paying the requisite fees if they demonstrate financial hardship. 28 U.S.C. § 1915(a)(1). As the Supreme Court has noted, the courts have an important oversight role in ruling on IFP motions because "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Neitzke v. Williams*, 490 U.S. 319 (1989). Following that guidance, this Court has previously denied requests to proceed IFP to those *pro se* plaintiffs who had demonstrated a pattern of filing numerous frivolous actions in federal courts. *Perales v. United States*, 133 Fed. Cl. 417, 418 (2017); *Resendez v. United States,* 96 Fed. Cl. 283, 287 (2010). As noted, Dr. Aljindi appears before this Court with claims that are "strikingly similar" to claims that other federal courts have found to be frivolous on several occasions. *Grant v. United States*, 129 Fed. Cl. 790, 792-93 (2017). Based on Dr. Aljindi's s history of vexatious and duplicative litigation, the Court finds that he is not entitled to a waiver of the filing fee. Accordingly, Dr. Aljindi's IFP Application is denied.

### III.     Conclusion

For the stated reasons, the plaintiff's Motion to Proceed *in forma pauperis* is **DENIED**, and this matter is **DISMISSED** for lack of subject-matter jurisdiction pursuant to RCFC 12(h)(3) and for failure to state a claim upon which relief can be granted. The Court further **CERTIFIES** that any appeal from this decision would not be taken in good faith. *See* 28 U.S.C. § 1915 (a)(3). The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

*David A. Tapp*
DAVID A. TAPP, Judge